**FILED**

**JUL 2 0 2016**

**Clerk, U.S. District & Bankruptcy**
**Courts for the District of Columbia**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 09-236-1 (RCL)** |
| ) | |
| **DAVID A. DUVALL,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are defendant David Duvall's two separate motions [205, 213] for sentence reductions under 18 U.S.C. § 3582(c)(2). While the first motion is based upon the retroactive application of U.S. Sentencing Guidelines' Amendment 750, which lowered the sentencing ranges for crack cocaine offenses, the second motion is based on Amendment 782, which applies more broadly and is commonly known as "all drugs minus two."[1] Each motion must be analyzed under the "two-step inquiry" set forth in *Dillon v. United States*, which requires that courts first determine if a defendant is eligible for a reduction under § 3582(c)(2) and then determine whether or not such a reduction is warranted according to the factors enumerated in 18 U.S.C. § 3553(a). 560 U.S. 817, 827 (2010). After considering Duvall's motion [205] for a sentence reduction under Amendment 750, the government's response [209], and Duvall's reply [211], as well as Duvall's motion [213] under Amendment 782, the government's response [224], Duvall's reply [227], the entire record in this case, and the applicable law, the Court will **DENY**

---

[1] Each motion operates under the same legal framework set out in § 3582(c)(2); they simply correspond to different retroactive amendments to the Sentencing Guidelines. Because the relevant facts and legal arguments remain constant from one motion to the next, the Court's decision on one motion will necessarily resolve the issues presented in the other motion.

both of Duvall's pending motions [205, 213]. In short, Duvall is ineligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) because his sentence was not "based on" a subsequently lowered range; moreover, even if the Court were authorized to reduce Duvall's sentence, such a reduction would be inconsistent with the sentencing factors found in § 3553(a) and would therefore be unwarranted under the second step of *Dillon*'s two-part inquiry.

## I.   BACKGROUND

On September 17, 2009, a Grand Jury in the District of Columbia issued a one-count Indictment against Duvall and four co-defendants for Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Cocaine Base and to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. § 846, 841(a)(1). Presentence Investigation Report ("PSR") ¶ 1, ECF No. 129. In short, the Grand Jury found that from at least August 2007 until his arrest in September 2009, Duvall and his associates supplied large quantities of power cocaine to street-level dealers, who would then cook the cocaine into crack and sell it throughout Washington, D.C. *See United States v. Duvall*, 705 F.3d 479, 481 (D.C. Cir. 2013). Following Duvall's indictment and arrest, the Court arraigned him on September 23, 2009, at which time he was held without bail pending trial. ECF No. 4, 11.

While trial was pending, the government filed a criminal information document under 21 U.S.C. § 841(b)(1)(A) to establish that Duvall had two prior convictions for felony drug offenses and to make it so that Duvall would face a mandatory minimum life sentence if he were convicted of his third drug offense at trial. *See* ECF No. 66. Specifically, § 841(b)(1)(A) states: "If any person commits a violation of this subparagraph or of section 849, 859, 860 or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ." Therefore, because

Duvall—as detailed in the government's criminal information filing—had felony convictions for the possession of cocaine and the possession with intent to distribute cocaine in 1995 and 1991, respectively, § 841(b)(1)(A)'s mandatory minimum life sentence would come into play if he were convicted of his third drug-related felony. *See United States v. Duvall*, 705 F.3d 479, 481 (D.C. Cir. 2013) ("The agreement expressly listed an agreed-upon sentence of 15 years' imprisonment. . . far lower than the mandatory life sentence that Duvall would have received had he been convicted at trial.")

On April 21, 2010, roughly three weeks after the government filed this criminal information, Duvall pled guilty and entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) (Rule 11(c)(1)(C)). If a Rule 11(c)(1)(C) plea agreement includes a "specific sentence or sentencing range" that the parties determined was appropriate, then once a court accepts the defendant's plea, it is bound to impose the agreed-upon sentence. *See Fed. R. Crim. P. 11(c)(1)(C); see also United States v. Duvall*, 705 F.3d 479, 481 (D.C. Cir. 2013) ("If the district court accepts a Rule 11(c)(1)(C) plea agreement, the court must impose the sentence listed in the plea agreement."). Duvall's Rule 11(c)(1)(C) plea agreement stated, among other things, that Duvall's relevant criminal conduct involved between 500 grams and 1.5 kilograms of crack cocaine base and that 168 months[2] was the appropriate sentence for his offense, meaning that if the Court accepted Duvall's plea, it was bound to impose the 168-month prison term.

On September 10, 2010, this Court imposed Duvall's agreed-upon 168-month prison term, which it was bound to do under Rule 11(c)(1)(C). Before imposing its sentence, the Court calculated Duvall's total offense level, criminal history level, and corresponding sentencing range,

---

[2] Although the plea agreement itself states that the parties agree a 180-month sentence is appropriate, Plea Agreement ¶ 3, ECF No. 91, the parties later revised their agreement to require a 168-month prison term—which is what the Court ultimately imposed at sentencing. Transcript of Sentencing at 6-7, Sept. 10, 2010, ECF No. 227-1.

as is required by law. *See United States v. Duvall*, 705 F.3d 479, 483 (D.C. Cir. 2013) ("Before a Rule 11(c)(1)(C) plea agreement is approved, moreover, the judge must calculate the applicable Guidelines sentencing range and consider the Guidelines." (citing 18 U.S.C. § 3553(a)(4); U.S.S.G. § 6B1.2(c))). In performing these calculations and accounting for Duvall's three-point reduction for acceptance of responsibility, the Court found Duvall's total offense level to be 31 and his criminal history category to be I.[3] Although at the time, such a combination would typically result in a sentencing range of 108–135 months, the Court set Duvall's guideline range at "life."[4] Essentially, U.S.S.G. § 5G1.1(b) states that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." *See also In re Sealed Case*, 722 F.3d at 369 ("When the guideline range for an offense is lower than the statutory mandatory minimum, the mandatory minimum statute replaces the guideline range and becomes the sentence." (citation omitted))). Because Duvall was otherwise subject to a mandatory life sentence, § 5B1.1(b) operated to set Duvall's sentencing range at "life," as opposed to 108-135 months, which would otherwise have been applicable.

---

[3] The Statement of Reasons lists Duvall's Total Offense Level at 29, not 31. *See* ECF No. 136. This was a clerical error. Duvall's Total Offense Level would have been 29 had the Court applied 18 U.S.C. § 3553(f)'s "safety valve" provision. However, because "[t]he Court . . . determined that the Safety Valve did not apply," Mem. & Order 3 n.1, ECF No. 170, Duvall's Total Offense Level remained at 31. *See also* PSR ¶¶ 26, 33 (showing Duvall's Total Offense Level to be 29 only after he received a two-point reduction for meeting the criteria of the "Safety Valve" provision).

[4] Several of Duvall's sentencing documents show his guideline range to be "life." *See* PSR ¶ 85 ("[B]ecause the mandatory term of imprisonment is Life, the guideline range for imprisonment is Life."); Probation Memorandum at 2, ECF No. 217 (showing "Life" as Duvall's "Original Guidelines Calculation"); Statement of Reasons, ECF No. 136 (showing Duvall's "imprisonment range" to be "life"). Moreover, the Court in its original opinion denying Duvall's first motion for a sentence reduction under § 3582(c)(2) reaffirmed that Duvall's original guideline range was "life." *See* Memorandum Opinion 4 n. 1, ECF No. 170 ("But, as described above, the appropriate guideline range for the Court to consider is life, both before and after the guidelines amendment.").

4

Although generally speaking a court may not modify a term of imprisonment once it has been imposed, 18 U.S.C. § 3582(c)(2) provides an exception. Under this provision, a court may be authorized to modify a term of imprisonment where the applicable sentencing guideline range has been retroactively lowered by the Sentencing Commission. One such reduction was Amendment 750, which applied only to crack cocaine offenses and was given retroactive effective on June 30, 2011. *See* Mem. & Order 3, ECF No. 170 (providing a brief history of Amendment 750 and its retroactive application). The first of Duvall's two pending § 3582(c)(2) motions is brought under this Amendment.

After passing Amendment 750 to reduce sentences for crack cocaine offenses, in August 2014 the U.S. Sentencing Commission submitted to Congress Amendment 782, which proposed a downward revision to sentencing ranges for nearly all drug trafficking offenses—not just those involving crack cocaine. Had Amendment 782 been in effect at Duvall's sentencing, his total offense level would have been 29, not 31[5]—meaning that the corresponding applicable guideline range would have been reduced from 108-135 months to 87-108 months.

Once Amendment 782 became effective, the Commission passed Amendment 788 to allow Amendment 782's revisions to be applied retroactively. These retroactive changes—including the two-point drop in Duvall's total offense level—became effective on November 1, 2014. Duvall now brings his second § 3582(c)(2) motion under Amendment 782, believing that these changes to the Sentencing Guidelines should permit this Court to reduce his sentence proportionally.[6]

---

[5] As discussed, Duvall's total offense level was calculated to be 31, not 29 as is erroneously indicated on the Statement of Reasons. *See supra* note 3.

[6] There is no dispute, however, that Duvall is subject to a mandatory minimum sentence of 120 months, which would prevent the Court from reducing Duvall's sentence below that point, even if he were otherwise eligible for a reduction. *See* Mot. for a Sentence Reduction 4, ECF No. 213 (stating that the "maximum reduction this Court can award" would result in Duvall serving a 120-month sentence).

## II.  PROCEDURAL HISTORY

Although Duvall has two motions for sentence reductions currently pending, this Court has already ruled on and denied a separate motion Duvall previously filed under § 3582(c)(2). Duvall's first motion [160] for a sentence reduction was filed on August 17, 2011, and the Court denied it on December 16, 2011 [170]. Importantly, the Court delivered its ruling before the D.C. Circuit issued *United States v. Epps*, 707 F.3d 337 (D.C. Cir. 2013) and *In re Sealed Case*, 722 F.3d 361 (D.C. Cir. 2013), two leading cases that set the standard under § 3582(c)(2) for whether or not the sentence of a defendant who had entered into an Rule 11(c)(1)(C) plea agreement was "based on" a specific and subsequently-lowered sentencing range.

*Epps* and *In re Sealed Case* interpret and apply *Freeman v. United States*, 564 U.S. 522 (2011), a 2011 Supreme Court case which ruled that defendants who had entered into a Rule 11(c)(1)(C) plea agreement are not automatically ineligible for a sentence reduction under § 3582(c)(2). *Freeman*, 564 U.S. at 534. Essentially, § 3582(c)(2) only authorizes a court to reduce a sentence if the defendant's sentence was "based on" a subsequently-lowered sentencing range. *See* 18 U.S.C. § 3582(c)(2). Looking to this statutory language, the government argued in *Freeman* that no defendant who had entered into a 11(c)(1)(C) plea agreement was eligible for a sentence reduction because the prisoner's sentence was not "based on" a subsequently-lowered range. Rather, under these circumstances, a prisoner's sentence was "based on" the terms the government and defendant settled upon when each party entered into the plea agreement. *See Freeman*, 564 U.S. at 531 ("The Government asks this Court to hold that sentences like petitioner's, which follow an 11(c)(1)(C) agreement, are based only on the agreement and not the Guidelines, and therefore that defendants so sentenced are ineligible for § 3582(c)(2) relief."). Further, the government argued that "the term of imprisonment imposed pursuant to a [11(c)(1)(C)] agreement [must be] .

. . 'based on' the agreement itself," because "[t]o hold otherwise would be to contravene the very purpose of (C) agreements—to bind the district court and allow the Government and the defendant to determine what sentence he will receive." *Freeman*, 564 U.S. at 537 (Sotomayor, J., concurring).

In a 4-4-1 split decision, however, the Supreme Court rejected the government's argument. Four Justices in a plurality opinion ruled that a sentence was based on a subsequently-lowered guideline "to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." *Freeman*, 564 U.S. at 530. Moreover, the opinion elaborated on this relatively "broad" reading of § 3582(c)(2), stating that "[a sentencing] judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief." *Id.* at 534; *cf. In re Sealed Case*, 733 F.3d 361, 365 (D.C. Cir. 2013) ("A four-Justice plurality took a broad view . . . .").

Justice Sotomayor, however, rejected the plurality's reading of § 3582(c)(2), though concurred in the final judgment. *Freeman*, 564 U.S. at 537 (Sotomayor, J., concurring) ("I cannot endorse the plurality's suggestion that § 3582(c)(2) should be understood to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." (citation omitted)). In her concurring opinion, Justice Sotomayor reasoned that the sentence of a defendant who had previously entered into a plea agreement could be "based on" a subsequently-lowered range only if the "agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the United States Sentencing Commission." *Id.* at 2695. In comparing

*Freeman*'s plurality opinion with Justice Sotomayor's concurring opinion, every other circuit court considered Justice Sotomayor's concurrence to be controlling because it resolved the case on the narrowest grounds.[7] In other words, every circuit that considered the question found Justice Sotomayor's concurrence to be binding on lower courts.

With these rulings in the background when Duvall filed his original August 17, 2011 motion for a sentence reduction, the government and Duvall agreed during those proceedings that Justice Sotomayor's concurrence was binding on this Court. *See* Memorandum and Order 4, ECF No. 170 ("The parties further agree that Justice Sotomayor's concurrence [in *Freeman*] provides the controlling precedent."). This Court therefore applied Justice Sotomayor's reasoning and denied Duvall's petition, finding that "at no point does the agreement state explicitly that the 180-month figure was based on any particular guidelines range, nor does it require that the defendant be sentenced within a particular range." *Id.* at 8. On appeal, the D.C. Circuit affirmed that ruling and went so far as to say that the question of whether or not Duvall's sentence was based on a subsequently-lowered range was "not even a close call" under Justice Sotomayor's then-prevailing standard. *United States v. Duvall*, 705 F.3d 479, 484 (D.C. Cir. 2013).

Less than one month after the D.C. Circuit affirmed this Court's denial of Duvall's original sentence-reduction petition, the Circuit decided *United States v. Epps*, 707 F.3d 337 (D.C. Cir. 2013), and effectively altered the legal landscape. In that case, the Circuit ruled that the reasoning embedded in Justice Sotomayor's *Freeman* concurrence was not controlling because it did not

---

[7] *See United States v. Rivera-Martinez*, 665 F.3d 344, 348 (1st Cir. 2011); *United States v. White*, 429 Fed. App'x 43, 47 (2d Cir. 2011) (unpublished); *United States v. Thompson*, 682 F.3d 285, 289 (3d Cir. 2010); *United States v. Brown*, 653 F.3d 337, 338 (4th Cir. 2011); *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011); *United States v. Dixon*, 387 F.3d 356, 359 (7th Cir. 2012); *United States v. Browne*, 698 F.3d 1042, 1045 (8th Cir. 2012); *United States v. Austin*, 676 F.3d 924, 927 (9th Cir. 2012); *United States v. Graham*, 704 F.3d 1275, 1278 (10th Cir. 2013); *United States v. Lawson*, 686 F.3d 1317, 1321 n.2 (11th Cir. 2012); *see also United States v. Duvall*, 740 F.3d 604, 609 (D.C. Cir. 2013) (Kavanaugh, J.) (concurring in denial of rehearing en banc).

"overlap *in rationale*" with the plurality opinion. *Epps*, 707 F.3d at 349 (emphasis in original).

Further, after finding that Justice Sotomayor's concurring opinion was not controlling, the Circuit

ruled that moving forward, district courts in the District of Columbia would be bound to follow

*Freeman*'s plurality opinion because it was "more persuasive than . . . the concurring opinion." *Id.*

at 351.

This change was significant: *Epps* ruled that district courts were required to apply a

different standard than this Court—and the D.C. Circuit itself—applied to deny Duvall's original

August 17, 2011 motion for a sentence reduction. *See United States v. Duvall*, 705 F.3d 479, 483

(D.C. Cir. 2013) ("For the purposes of this appeal, both parties agree that Justice Sotomayor's

opinion controls our analysis . . . . Accordingly, we do not further address that question.").

According to Justice Sotomayor's concurrence, which prior to *Epps* this Court understood as

binding, the sentence of a defendant who had entered into an 11(c)(1)(C) plea agreement could be

based on a subsequently-lowered range only if the plea "agreement expressly uses a Guidelines

sentencing range applicable to the charged offense to establish the term of imprisonment, and that

range is subsequently lowered by the United States Sentencing Commission." *Freeman v. United*

*States*, 564 U.S. 522, 534 (2011) (Sotomayor, J., concurring). After *Epps*, however, a defendant

could successfully argue that the sentence contained in his plea agreement was "based on" a

subsequently-lowered range whenever the "sentencing range in question was a relevant part of the

analytic framework the judge used to determine the sentence or approve the agreement." *Freeman*

*v. United States*, 564 U.S. 522, 529 (2011).

The standard in *Epps* was re-emphasized in *In re Sealed Case*, 722 F.3d 361 (D.C. Cir.

2013), where the D.C. Circuit ruled that a defendant's 135-month sentence was "based on" his

151-181-month guideline range because that range played at least some role in the judge's

sentencing decision. Interestingly, the Circuit came to this decision even though the defendant's 151-181-month sentencing guideline range would have been supplanted by a 20-year mandatory minimum had the government not filed a motion under 18 U.S.C. § 3553(e) for substantial assistance. 722 F.3d 361, 363 (D.C. Cir. 2013). Regardless of the looming 20-year mandatory minimum and the fact that the defendant was sentenced below his applicable guideline range, the Circuit found that the 151-181-month range formed "the very basis" of the defendant's 135-month sentence. *In re Sealed Case*, 722 F.3d at 367.

In his current motion, Duvall argues that under *Epps*, *In re Sealed Case* and the *Freeman* plurality opinion, his sentence was "based on" a subsequently-lowered range because that range played some role in the judge's decision-making process. Duvall believes that the relevant legal standard has shifted in such a way that the Court's previous December 16, 2011 ruling is no longer valid. Under the "broader view" embraced by *Epps* and *In re Sealed Case*, *see In re Sealed Case*, 722 F.3d at 365, Duvall argues that his sentence was "based on" a subsequently-lowered range because the recently amended 108-135-month range played some role in the Court's decision to impose the 168-month sentence contained in the defendant's plea agreement.

### III. DISCUSSION

This Court lacks the authority to reduce Duvall's sentence pursuant to § 3582(c)(2) because his 168-month sentence was not based on a subsequently-lowered sentencing range. Moreover, even if Duvall were eligible for a sentence reduction, the "marginal effect the since-rejected Guideline had on [his] sentence" was so negligible that no reduction would be warranted. *Freeman*, 564 U.S. at 530. This Court comes to the same conclusion that no reduction in Duvall's sentence would be warranted when considering the factors articulated in 18 U.S.C. § 3553(a).

## A. Duvall Is Ineligible for a Sentence Reduction

Because Duvall's original sentence was not "based on" a subsequently-lowered sentencing range, he is ineligible for a sentence reduction under § 3582(c)(2). At its core, Duvall's argument goes as follows: First, Duvall's total offense level was set at 31, which corresponds to a sentencing range of 108-131 months. Next, pursuant to Amendments 782 and 788, his total offense level was retroactively reduced two points, resulting in a new corresponding sentencing range of 87-108 months. Lastly, according to Duvall's argument, because this subsequently-lowered 108-131 month guideline range played some role in the "analytic framework" the judge used to impose his original sentence, *In re Sealed Case*, 722 F.3d 361, 366 (D.C. Cir. 2013) (citing *Freeman v. United States*, 564 U.S. 522, 537 (2011)), Duvall's sentence was "based on" a subsequently-lowered sentencing range and he should be considered eligible for a proportional reduction under § 3582(c)(2).

Duvall is correct that the original 108-135 month range that corresponded to Duvall's total offense level and criminal history category has been retroactively lowered; however, that sentencing range was not part of the analytical framework the judge used to impose his sentence. Therefore, according to the standard laid out in *Epps* and *In re Sealed Case*, Duvall is ineligible for the sentence reductions that he currently seeks pursuant to § 3582(c)(2).

In order for the Court to have the authority to reduce a defendant's sentence pursuant to § 3582(c)(2), the defendant must satisfy two basic eligibility requirements: his sentence must have been "'based on' a subsequently-lowered guideline range, [and] . . . the sentence reduction [must be] consistent with U.S.S.G. § 1B1.10, the policy statement governing § 3582(c)(2) proceedings." *In re Sealed Case*, 722 F.3d 361, 366 (D.C. Cir. 2013) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). When considering these requirements, the above discussion of *Epps* and

*Freeman* demonstrates that it is often difficult to assess whether or not a sentence was "based on" a specific sentencing range when a defendant and the government entered into a Rule 11(c)(1)(C) plea agreement and the Court imposed the sentence contained in that agreement. As stated, *Epps* and *In re Sealed Case* are controlling and hold that "a defendant's sentence is 'based on' a subsequently-lowered guideline range 'to whatever extent' that range was a relevant part of the analytic framework the judge used to determine the sentence." *In re Sealed Case*, 722 F.3d 361, 366 (D.C. Cir. 2013) (citing *Freeman v. United States*, 546 U.S. 522, 537 (2011)).

When conducting this analysis, the D.C. Circuit has directed that the "focus . . . ought to be on the reasons given by the district court for accepting the sentence that it ultimately imposed, not on the parties' agreement." *United States v. Epps*, 707 F.3d 337, 353 (D.C. Cir. 2013) (citation omitted)). Consistent with this directive and as recently articulated in *United States v. Barajas*, "[s]ince *Epps*, courts in this Circuit have found three sources of evidence for determining the connection between a Rule 11(c)(1)(C) sentence and the Guideline range: sentencing hearings, plea hearings, and the text of the plea agreement.[8]" Crim. No. 11-148 (ESH), 2016 WL 1328095 at *2 (D.D.C. April 5, 2016) (citing *United States v. Gross*, Crim. No. 10-0036 (PLF), 2016 WL 410985 (D.D.C. Feb. 2, 2016); *United States v. Santana-Villanueva*, 144 F. Supp. 3d 149 (D.D.C. 2015); *United States v. Galaviz*, 130 F. Supp. 3d 197 (D.D.C. 2015)).

In looking to *Epps*'s standard and relying on the sources of evidence described in *Barajas*, it is clear that although the Sentencing Guidelines were referenced in these proceedings, Duvall's 168-month sentence was not "based on" any subsequently-lowered sentencing range. Indeed, the broader record of the case—namely, the sentencing and plea transcripts—shows that Duvall was

---

[8] Although under *Epps*, the agreement itself cannot be the focus of the legal inquiry, it is still relevant, as it may shed light on the reasons the court accepted the plea agreement and imposed the sentence contained therein.

given two choices: face a jury and be exposed to the risk of a mandatory minimum life sentence or accept the 168-month sentence. *See United States v. Duvall*, 705 F.3d 479, 481 (D.C. Cir. 2013) ("Duvall would face a mandatory life sentence if found guilty at trial. . . . His attorneys negotiated with the Government, and the parties ultimately reached a plea agreement that avoided a possible life sentence."). As such, the 168-month sentence effectively operated as a decrease from the life sentence that Duvall would have received had he been found guilty at trial. *See* Statement of Reasons 2, ECF No. 136 (showing that the 168-month sentence imposed was "below the advisory guideline range"). It was not, as Duvall argues, some sort of upward departure from the 108-135 month guideline range that was linked to his criminal history and to the amount and kinds of drugs Duvall attempted to sell in this particular offense.

Consistent with this interpretation, Judge Lamberth's statements at the plea acceptance demonstrate that the Court imposed the 168-month sentence entirely because it was compelled to do so under Rule 11(c)(1)(C), not because the sentence was otherwise reasonable in light of the 108-135 month sentencing range. More specifically, at sentencing, the Court stated:

> The Court: I take it the government's suggestion that the 11(C)(1)(c) term of 180 months be reduced to 168 months is agreeable to the defendant, and so that that's, in effect, a consent modification of the 11(C)(1)(c)?
>
> Mr. Carney: It is, Your Honor, and we're appreciative of that. Your Honor can consider that in terms of whatever you think is fair and right.
>
> The Court: Well, under 11(C)(1)(c), I take it, I'm bound by the 168?
>
> Mr. Carney: Yes, Your Honor.
>
> The Court: All right, if the defendant would come forward.

Plainly, the factual circumstances of this case are very different from those of *In re Sealed Case*, where Circuit found that the defendant's sentence was "based on" a subsequently-lowered range after the district judge expressly referenced a "further reduction from the guideline range" at the

sentencing hearing. 722 F.3d at 366. In Duvall's case, the sentencing judge made no mention of a specific guideline range, or even the Sentencing Guidelines more broadly, strongly suggesting that Duvall's 168-month sentence was not based on the subsequently-lowered 108-135 month range. *See Epps*, 707 F.3d at 352 (ruling that to be eligible for a sentence reduction, the original sentence must have been "based on a specific guidelines range," not simply imposed "in accordance with" the Guidelines).

This analysis is further supported by portions of the Court's original memorandum and order dated December 16, 2011 denying Duvall's first motion for a sentence reduction under § 3582(c)(2). In that ruling, this Court found that a life sentence—not a subsequently-lowered sentencing range—was Duvall's original guideline range. Indeed, the Statement of Reasons shows Duvall's guideline imprisonment range to be "life," not 108-135 months, *see* ECF No. 136, as do both Duvall's presentencing report and the Probation Memorandum prepared to assist the Court on the present motion. *See* ECF No. 217; *see also supra* at 4 (explaining how the mandatory minimum of life under 21 U.S.C. § 841(b)(1)(A) worked in combination with § 5G1.1 of the U.S. Sentencing Guidelines Duvall's Guideline range at life). Because Duvall's original guideline sentence was life, and because that sentencing range has not been lowered, Duvall's sentence could not have been "based-on" a subsequently-lowered range. Therefore, he is ineligible for a sentence reduction.[9]

---

[9] The Court provided lengthy analysis on this point when it denied Duvall's original motion for a sentence a reduction in 2011. *See* Mem. & Order 3-4 n.1, ECF No. 170.

To undercut this analysis, Duvall makes three primary arguments.[10] Specifically, he argues that the Court must have based it sentencing decision on the subsequently-lowered 108-135 month guideline range because (i) the Guidelines calculation appear "plainly in the Statement of Reasons"; (ii) defendant's counsel submitted a sentencing memorandum with "possible guidelines sentences," which the government did not object to; and (iii) at the sentencing hearing, counsel for the government remarked that that the 168-month sentence would be "within the parameters of the Guidelines." Reply to Government's Opp'n 4, ECF No. 227.

---

[10] Duvall also argues that language in *In re Sealed Case* and *Freeman* should be interpreted to mean that any and all prisoners who were sentenced according to a Rule 11(c)(1)(C) plea agreement are always eligible for a sentence reduction under § 3582(c)(2). *See* Reply to Government's Opp'n 3, ECF No. 227 ("Even if there remains some small subset of defendants who enter into Rule 11(c)(1)(C) pleas who are not eligible for sentencing relief under Section 3582(c)(2) (a point we do not concede here)…").

Specifically, on the third page of his reply brief, Duvall highlights the following language from *In re Sealed Case*: "a sentence that emerges from a Rule 11(c)(1)(C) plea agreement is always eligible for a subsequent reduction because '[t]he sentencing Guidelines require the district [court] to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea.'" *In re Sealed Case*, 722 F.3d at 365 (quoting *Freeman*, 564 U.S. at 530).

At first glance, this language seems straightforward, and indeed, Judge Walton credited a similar argument in *United States v. Lamont*, Crim. No. 04-536-1), ECF No. 577. Specifically, the Judge found that the defendant's Rule 11(c)(1)(C) sentence was "based on" a specific guidelines range because the Court was "'forbid[den]' from 'accepting [a Rule] 11(c)(1)(C) [plea] agreement without first evaluating the recommended sentence in light of the defendant's applicable sentencing range." *Lamont*, at 7 (citing *Freeman*, 564 U.S. at 529).

*Lamont*'s reasoning however is inapplicable to the present case. Duvall's original guideline range was "life," and the Sentencing Commission has left that range unchanged. As such, Duvall's range was not "based on" a subsequently-lowered sentencing range. *In re Sealed Case*'s language that "a sentence that emerges from a Rule 11(c)(1)(C) plea agreement is always eligible for a subsequent reduction" can only apply when the Sentencing Commission later lowered the defendant's original sentencing range—which is not the case for Duvall, whose range of "life" was never reduced.

Not only that, but the excerpt of *In re Sealed Case* defendant quotes is in direct tension with *In re Sealed Case*'s other pronouncement that: "Although the Guidelines require a sentencing court to calculate, as a matter of course, a guideline range before determining whether a mandatory minimum applies, we concluded in *Cook* [v. *United States*, 594 F.3d 883, 887 (D.C. Cir. 2010)] that this routine and required calculation did not mean that the defendant was sentenced "based on" on his guideline range." 722 F.3d at 366. In the Court's view, this tension reduces the importance and persuasiveness of the excerpted language that Duvall cites to in his reply brief.

All three of these arguments fail. First, the fact that the Court listed Duvall's total offense level and criminal history category in his Statement of Reasons alone does not show that Duvall's sentence was based on a subsequently-lowered range. Indeed, courts are required to perform such calculations. *See, e.g., Freeman*, 564 U.S. at 530 ("The [Sentencing] Guidelines require the [Court] to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea."). Therefore if such a calculation universally qualified a defendant for a sentence reduction, then any defendant seeking a reduction would become automatically eligible—something prior case law tells us is not true. *See, e.g., United States v. Cook*, 594 F.3d 883, 886-887 (D.C. Cir. 2010) (finding that although the "court had initially calculated a guideline range that the Amendment to the Sentencing Guidelines altered," that guideline range was "trumped by a statutory minimum"); *United States v. Barajas*, 2016 WL 1328095 at *1, *4, Crim. No. 11-148 (ESH) (D.D.C. Apr. 5, 2016) (finding that although "the Court held a sentencing hearing at which it calculated the Guidelines range that would apply to defendant, as it is required to do," the sentence contained in his Rule 11(c)(1)(C) agreement was not "based on" that range); *United States v. Gross*, Crim. No. 10-0036, ECF No. 52, at 5 (D.D.C. Feb. 2, 2016) (Friedman, J.) (ruling that although the "Court was required to explain the applicable Guidelines sentencing range" that range was "irrelevant" to the sentence contained in defendant's Rule 11(c)(1)(C) plea agreement). Not only that, but the Court did not even calculate Duvall's range to be 108-135. It set Duvall's range at "life," diminishing the importance of this routine calculation and lending further support to the Court's central finding that Duvall's sentence was not "based on" any subsequently-lowered range.

After making that argument, Duvall contends that his own submission of a sentencing memorandum that detailed "possible guidelines sentences under several scenarios" indicates that

his sentence was based on a range subsequently and retroactively lowered by the Sentencing Commission. *See* ECF No. 227 at 4. Indeed, it is true that in Duvall's memorandum in aid of sentencing, he explicitly states, "Mr. Duvall would be facing a level 34, without any adjustments, and a criminal history category I, which would be 151-188 months of incarceration with a ten year mandatory minimum. With a three level reduction for acceptance of responsibility, Mr. Duvall faces 108 to 135 months." Def.'s Mem. in Aid of Sentencing, ECF No. 183 at 3.[11] These ranges were subsequently lowered by Amendment 782 and made retroactive by Amendment 788, meaning that if Duvall was actually sentenced according to them, he would be eligible for a reduction under § 3582(c)(2)—provided the reduction was consistent with U.S.S.G. § 1B1.10. As stated, however, courts are bound to make these types of "routine" calculations before imposing a sentence. *In re Sealed Case*, 722 F.3d at 366. The fact that the defendant performed and submitted the relevant Guidelines calculations to the Court does not alter the underlying fact that the Court's sentence was not based on those guideline ranges. For reasons already described— including the Court's calculation that Duvall's sentencing range was "life"—the 168-month sentence was in no way based on the subsequently-lowered 108-135 month sentencing range. The fact that Duvall's counsel calculated this range and included it in a court filing does nothing to change the underlying "analytical framework" the Court used to impose its sentence. *Freeman*, 564 U.S. at 529.

Responding to Duvall's third argument, the government counsel's statement that Duvall's sentence was "within the parameters of the Guidelines" does not transform the Court's rationale for imposing Duvall's 168-month prison term. A defendant is eligible for a reduction only if his sentence was "based on a specific Guidelines range." *Epps*, 707 F.3d at 352. Indeed, in *Epps*, the

---

[11] The sentencing Judge gave Duvall a three-point reduction for acceptance of responsibility. *See* PSR ¶ 23.

D.C. Circuit ruled that a plea agreement's statement that a sentence "will be imposed in accordance with the Guidelines" was "ambiguous and insufficient alone to anchor the inference that a sentence was determined by an otherwise unspecified Guidelines range." *Id.* (citing *Cook v. United States*, 594 F.3d 883, 888 (D.C. Cir. 2010)). The facts in this case are completely analogous. Counsel for the government simply stated the sentence was "within the parameters of the Guidelines," and similar to *Epps,* did not mention a specific guideline range. Therefore, as in *Epps*, this passing reference to the Guidelines does not "anchor the inference" that Duvall's sentence was "based on a specific Guidelines range." *Epps*, 707 F.3d at 352.

In sum, in light of the entire record in this case, the Court finds that under the standard articulated in *Epps* and *In re Sealed Case*, Duvall's sentence was not based on a subsequently-lowered sentencing range and he is therefore ineligible for a sentence reduction under § 3582(c)(2).

### B. The Sentence Reduction Is Unwarranted

Even if, theoretically, Duvall were eligible for a sentence reduction, his reduction would be unwarranted because the lowered range would have had no impact on his sentence and because the § 3553(a) factors weigh against a reduction. Section 3582(c)(2) permits a reduction only if it is "consistent with the applicable policy statements issued by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(2). The applicable policy statement is U.S.S.G. § 1B1.10, which the Supreme Court in *Freeman* interpreted as follows: "[§ 1B1.10] instructs the district court in modifying a sentence to substitute only the retroactive amendment and then leave all original Guidelines determinations in place. In other words, the policy statement seeks to isolate whatever marginal effect the since-rejected Guideline had on the defendant's sentence." 564 U.S. at 2692.

In applying this standard, it is clear that the Court would not have imposed a shorter sentence had the applicable guideline range been lower at the time of sentencing. Indeed, the Court is directed to isolate the impact the 108-135 month sentencing range had on Duvall's 168-month sentence, and adjust Duvall's sentence to where it would have been had the newly-revised 87-108 month range been in place at the time of sentencing. As discussed, however, this range had no bearing on Duvall's 168-month sentence. The 168 months were presented to Duvall as an alternative to the possibility of life in prison and was, in effect, a downward departure from that potential life sentence. *See* Statement of Reasons 2, ECF No. 136 (showing that the 168-month sentence imposed was "below the advisory guideline range"); *id.* at 1 (showing Duvall's "imprisonment range" to be "life," even though his total offense level was listed as 29). As such, because the since-reduced 108-135 month guideline range had no "marginal effect" on the defendant's sentence, no modification is warranted under § 3582(c)(2). 564 U.S. at 2692.

Moreover, just as a sentence reduction in this case would be inconsistent with U.S.S.G. § 1B1.10, it would also be unwarranted in light of the factors laid out in § 3553(a). In addition to its other requirements, § 3582(c)(2) instructs courts to "consider[] the factors set forth in section 3553(a)" before reducing the prison term of an otherwise eligible defendant. 18 U.S.C. § 3582(c)(2); *see also Dillon v. United States*, 560 U.S. 817, 827 (2010) ("At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.").

The first and second § 3553(a) factors, the "nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense . . . [and] to afford adequate deterrence to criminal conduct . . ."

weigh heavily against the defendant. 18 U.S.C. § 3553(a)(1)-(2). Indeed, the underlying circumstances of Duvall's offense were serious enough that based on his criminal record and the amount of drugs he was conspiring to sell, Duvall faced a mandatory minimum life sentence. Prior to this case, Duvall had accrued two felony drug convictions, a conviction for carrying a gun, and a misdemeanor drug conviction. And in the present case, he traveled to North Carolina to procure large amounts cocaine and conspired to have it cooked and distributed on a retail basis throughout Washington, D.C. Needless to say, this conduct paints Duvall's "history and characteristics" in a poor light and suggests that a relatively longer sentence is necessary to achieve § 3553(a)(B)(2)'s goal of adequate deterrence.

As opposed to the first two § 3553(a) factors, which weigh against the defendant, the sixth § 3553(a) factor, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," is neutral. Because, defendants similarly situated to Duvall would face a life sentence under 21 U.S.C. § 841(b)(1)(A), decreasing Duvall's already-reduced 168-month sentence would not accomplish the goals articulated in § 3553(a)(6) and therefore does not favor early release.

Although Duvall disputes these general findings by claiming that "upon release in . . . older cases, he built a fairly steady work record with employment as a welder, cleaner, security officer, and vendor," and that "[h]e has absolutely no violence in his past," ECF No. 213, at 4, these statements are either largely unsupported or patently false. With respect to Duvall's work history, the Probation Office was unable to substantiate Duvall's purported previous employment as vendor, welder, or cleaner.[12] *See* PSR ¶ 68 ("Lexis/Nexis records did not return any business licenses issued to Mr. Duvall [relating to work as a vendor]."); *id.* at ¶ 70 ("According to their

---

[12] The Probation Officer did, however, substantiate Duvall's employment as a security guard, finding records that showed him employed from May 1, 1992 to August 13, 1993. PSR ¶ 71.

response, the defendant was never in [Capital Canopy's] employ."); *id.* at 71 ("There was no other information pertaining to the defendant's employment with this business available in their records."). With respect to violence, Duvall's cousin had previously applied for a battery warrant against him and told police that he had assaulted her. *Id.* ¶ at 37. Moreover, when arrested in response to this battery charge, Duvall was in possession of a firearm that had been reported stolen. *Id.* In the court's view, these facts are inconsistent with defendant's proffer that "he has absolutely no violence in his past" and weighs against a sentence reduction.

While these factors weigh against a reduction, Duvall's good disciplinary record in prison cuts in the opposite direction. Duvall has been incarcerated for five years and is yet to receive any disciplinary reports—something the Court is permitted to consider under U.S.S.G. § 1B1.10 and bound to consider under § 3553(a)(2)(B)-(C). *See* U.S.S.G. § 1B1.10 cmt. 1(B)(iii) ("The court may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment in determining: (I) Whether a reduction in the defendant's term of imprisonment is warranted . . . ."); *Pepper v. United States*, 562 U.S. 476, 478 (2011) ("His postsentencing conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that sentencing courts must consider." (citing 18 U.S.C. § 3553(a)(2)(B)-(C))); *cf.* 18 U.S.C. § 3553(a)(2)(B)-(C) ("The court, in determining the particular sentence to be imposed, shall consider . . . the need for the sentence imposed to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant.").

Although Duvall deserves credit for his spotless prison record, on balance, a sentence reduction is unwarranted given the severity of Duvall's crime and his criminal history. The facts of this case are remarkably similar to those of *United States v. Lamont*, Crim. No. 04-536-1, ECF No. 577 (D.D.C. Mar. 21, 2016), where Judge Walton denied the § 3582(c)(2) motion of an

otherwise eligible defendant who, like Duvall, had a model disciplinary record in prison. Judge

Walton ruled that any reduction was unjustified in light of the § 3553(a) sentencing factors, *see id.*

at 7-9, and concluded his opinion with the following:

> [A]lthough courts should always be hopeful that individuals convicted for criminal
> behavior will reform, that optimism logically diminishes when conduct committed
> during an individual's youth is replicated later in the person's life. And in the
> Court's experiences, the prospects of further involvement in criminal behavior is
> even greater when the offense for which a defendant is before the Court for
> sentencing occurred when the defendant is of an advanced age—here age forty—
> and the offensive conduct is identical to prior conduct for which the defendant had
> been convicted in his youth.

*Id.* at 9.

Similar to the defendant in *Lamont*, Duvall was 40 when he was originally sentenced, he

had regularly engaged in drug-related criminal behavior in his past, and importantly, the conviction

at issue was for a crime far more serious than he had ever committed. These factors speak directly

to the sentencing goals expressed in 3553(a)(1)-(2), and, as in *Lamont*, they are substantial enough

to outweigh other, countervailing considerations. For these reasons, the Court finds that even if

Duvall were eligible for a reduction, such a reduction would not be warranted.

## IV.  CONCLUSION

Because Duvall's sentence was not "based on" a subsequently-lowered, he is ineligible for

a sentence reduction. Moreover, even if he were eligible, a sentence reduction is unwarranted in

light of the § 3553(a) sentencing factors. After considering Duvall's motions, the entire record

herein, and the applicable law, the Court will **DENY** each of his motions for a sentence reduction.

**IT IS SO ORDERED** on this 20th day of July, 2016.

Royce C. Lamberth
United States District Judge

22